T.C. Memo. 1997-129


UNITED STATES TAX COURT


MARY ANN AND WILSON R. COLLINS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7938-95.                    Filed March 11, 1997.


Mary Ann Collins, pro se.

<u>Leslie H. Finlow</u>, for respondent.


MEMORANDUM OPINION


DAWSON, <u>Judge</u>:  This case was assigned to Special Trial

Judge D. Irvin Couvillion pursuant to section 7443A(b)(4) and

Rules 180, 181, and 183.[1]  The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

COUVILLION, Special Trial Judge:  Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) |
|------|-----------|--------------------------------|
| 1989 | $11,135 | $2,154.85 |
| 1990 | 12,800 | 2,383.00 |
| 1991 | 6,984 | 981.00 |
| 1992 | 6,881 | 1,984.00 |

After concessions by the parties, the issues remaining for decision are:  (1) Whether Mary Ann Collins (petitioner) overstated gross receipts or sales income from her trade or business activity for the years 1989 and 1990; (2) whether petitioners are entitled to a child care credit under section 21

_____

[1]   Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure. Petitioners elected that this case be considered as a small tax case pursuant to sec. 7463.  Prior to commencement of the trial, the Court ordered the discontinuance of the proceedings under sec. 7463 because the deficiencies in tax for 2 of the years in question were in excess of $10,000, and the allegations in the petition placed at issue the entire amounts of the deficiencies and additions to tax determined in the notices of deficiency. The Court thereupon assigned the case to the Special Trial Judge pursuant to sec. 7443A(b)(4).  Respondent filed an answer, generally denying petitioners' allegations.

for 1989, 1990, and 1991; and (3) whether petitioners are liable

for the addition to tax under section 6651(a)(1) for the 4 years

at issue.[2]

Some of the facts were stipulated. Those facts, with the

annexed exhibits, are so found and are incorporated herein by

reference. At the time the petition was filed, petitioners,

husband and wife, were residents of Oxon Hill, Maryland.

Petitioner is a schoolteacher. During the years at issue,

petitioner was also engaged in a trade or business activity that

she described as a beauty consultant. Essentially, the activity

she was engaged in was that of a representative for the Mary Kay

[2] Respondent issued three notices of deficiency for the 4
years at issue. After the notices of deficiency were issued,
petitioner met with an Appeals officer for respondent, and, as a
result, respondent either conceded or made additional allowances
on several of the adjustments in the notices of deficiency. At
trial, the parties advised the Court that these adjustments were
considered settled, with respondent conceding the allowances of
the Appeals officer and petitioner conceding those adjustments
that had not been totally allowed by the Appeals officer (except
as to the three remaining issues described above). The parties
did not submit to the Court a listing of the various adjustments.
Counsel for respondent referred to some of these adjustments
during the trial, but the settled issues were not formalized in a
written agreement nor made part of the stipulation. In addition
to these concessions, respondent, at trial, conceded petitioners'
entitlement to a rental expense deduction for roof repairs for
the year 1991 in the amount of $3,480. This item had not been
claimed on petitioners' 1991 income tax return, nor was it
brought up by petitioners in the audit process. The item was
brought up by petitioner with the Appeals officer, who
acknowledged the expenditure but treated it as a capital
expenditure and allowed a $100 depreciation deduction for 1991.
The effect of respondent's concession at trial is to allow the
entire amount of $3,480 as a deduction for 1991 and elimination
of the $100 depreciation deduction allowed by the Appeals
officer.

Cosmetics Co., in which she sold the beauty products of that company. Petitioner had been engaged in this activity for approximately 10 years. Wilson R. Collins was employed by a private security firm during the years at issue. In addition to petitioner's Mary Kay Cosmetics activity, petitioners owned an apartment building during the years at issue. On their Federal income tax returns, petitioners reported their income and expenses from the Mary Kay Cosmetics activity and the apartment building rental activity on Schedules C and E, respectively, Profit or Loss From Business, and Supplemental Income and Loss.

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to show that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Further, section 6001 requires, in pertinent part, that "Every person liable for any tax * * * shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe." Section 1.6001-1(a), Income Tax Regs., provides, in pertinent part, that "any person subject to tax under subtitle A of the Code * * *, shall keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax".

With respect to the first issue, petitioners contend that the gross sales receipts reported on Schedule C of their tax returns for 1989 and 1990 for petitioner's Mary Kay Cosmetics business were overstated. For 1989, petitioners reported gross receipts of $29,127. At trial, petitioner contended that the correct amount of gross receipts for 1989 was $20,356.55. For 1990, petitioners reported gross receipts from the Mary Kay Cosmetics activity in the amount of $27,827. At trial, petitioner contended that the correct amount was $18,391.30.

This issue was not alleged in the petition. Petitioner testified, however, that the matter was brought up in the conference petitioner had with respondent's Appeals officer after the notices of deficiency were issued. The Appeals officer did not agree to any concession or revision of the gross receipts reported by petitioners for the 2 years in question. At trial, petitioner offered into evidence a stack of sales tickets that she contended represented the totality of her sales for the 2 years in question, and which would total to the lesser amounts recited above. This information had not been presented to counsel for respondent prior to trial. To afford counsel the opportunity to review this information, as well as to meet with petitioner in hopes that this issue might be resolved or a basis of settlement might be reached, the Court ordered the trial recessed for a period of 2 days, after which the case would be recalled and the trial resumed and closed. Petitioner was

advised that, if respondent did not accept her documentation and declined to concede or settle the issue, the Court expected her to be present to finalize the presentation of this issue.

When the case was recalled, counsel for respondent advised the Court that, upon review of petitioner's sales tickets, respondent was unwilling to make any concessions on this issue, that petitioner had been advised of respondent's position, and that petitioner was advised that she should appear at the recall session for the conclusion of this case. Petitioner did not appear at the recall of the case and never advised either the Court or counsel for respondent as to her reason for failing to appear.

On recall of the case, counsel for respondent gave the following reasons why respondent was not willing to accept the sales tickets as evidence of the reduced amount of gross receipts for the 2 years in question:

Some of the receipts appear to have been altered as to amounts paid. The receipts are in no recognizable chronological sequence, as there are a number of different tracing numbers on the receipts, suggesting that Petitioner had numerous receipt books. There are sequential gaps from receipt to receipt, suggesting that there are other receipts which Petitioner has not provided for Respondent's inspection. And the Petitioner has represented that she provided an adding machine tape to each bundle of receipts and the total amount on the tape represents the total receipts contained in the bundle. In fact, the totals on the tapes did not match the total receipts in each bundle in almost all cases.

Some of the tapes contain inexplicable additions and subtractions. Some of the tapes recorded a $20 receipt, for

example, and the amount of 20 cents, due to misplacement of the decimal, and some of the tapes had substantial omissions.

The Respondent spoke to the Petitioner on the telephone yesterday afternoon * * * and conveyed to her these conclusions * * * that Respondent would not concede reported gross receipts amounts for 1989 and 1990.

At the time the parties spoke, Petitioner did not know whether she would come to Court or not. In any event, the Respondent has no questions for Petitioner.

The Court, however, would have been interested in hearing petitioner's testimony regarding these sales tickets and to explain or address the problems pointed out by counsel for respondent. Petitioner produced no accounting records that would corroborate the sales tickets. The tickets alone do not have that much significance to the Court without testimony explaining petitioner's accounting methodology and, in particular, addressing the apparent flaws suggested by respondent's counsel. The gross receipts reported on the tax returns are admissions by petitioners, and we generally do not permit the substitution of lower values in the absence of cogent proof. See Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989). On this record, the Court holds that petitioners failed to sustain their burden of proof on this issue. Respondent, therefore, is sustained.

The second issue is whether petitioners are entitled to a child care credit for the years 1989, 1990, and 1991. Petitioners claimed a credit of $960 for each of these years for two dependent children. Respondent disallowed the credit for

each of the 3 years.  The reason advanced in the notices of deficiency is that one of petitioners' dependents, a child, was over 13 years of age, and, in addition, petitioners had not substantiated the amounts claimed to have been paid for child care.  The statutory notices further stated that, even if the amount of child care payments claimed for the other qualifying child, $682, had been substantiated, that amount would not be "nearly enough to result in [the] maximum credit taken of $4800".

Section 21(a) generally provides allowance for a credit against the tax to any individual who maintains a household that includes as a member one or more qualifying individuals and who incurs employment-related expense.  The term "qualifying individual", under section 21(b), includes a dependent of the taxpayer under age 13, with respect to whom the taxpayer is entitled to a dependency deduction under section 151(c).  The allowable credit, under section 21(b)(2), generally is based upon employment-related expenses that are incurred to enable the taxpayer to be gainfully employed, including expenses incurred for the care of a qualifying individual.  Other provisions and conditions of the credit are not pertinent here.

Petitioner's oldest dependent child, Tanya, was born on May 3, 1971.  Therefore, as of December 31, 1989, Tanya would have been over 18 years of age.  Under section 21(b), petitioners were not entitled to a child care credit with respect to Tanya, since she was over 13 years of age for each of the years at

issue.  As to the other child, James, who was less than 13 years of age during the 3 years in question, petitioners presented no documentary evidence to establish the amounts they paid each year for his care while petitioners pursued gainful employment. Petitioner testified she paid approximately $50 per week, for 50 weeks each year, for his care.  These payments were in cash, and petitioner produced no receipts to substantiate these payments.

The Court recognizes that petitioners were both gainfully employed during the years at issue; however, the Court is skeptical that petitioners incurred payments for the care of James, or, if any payments were incurred, that such payments would have been for 50 weeks each year.  Petitioner was a schoolteacher, and while petitioner was at school teaching, her child was also at school, and, more than likely, the two returned home on or about the same time each day.  Moreover, schoolteachers generally have 3 months each summer when they are not required to report to work.  For these time periods, the Court cannot conclude that child care expenses were incurred. And, finally, petitioners had another dependent child, Tanya, who was over 18 years of age in 1989.  Tanya may well have provided some of the child care responsibilities for James on those occasions where petitioners were unable to care for James.  The Court, therefore, holds for respondent on this issue and, moreover, declines to make any allowance for child care expenses

pursuant to <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930).

The final issue is the addition to tax under section 6651(a)(1) for the 4 years at issue for failure to timely file Federal income tax returns.

Petitioners' 1989 return was received by respondent's Philadelphia, Pennsylvania, office on June 11, 1992; their 1990 and 1991 returns bear a preparer's signature date of May 12, 1992, and the 1992 return was received by respondent's Philadelphia, Pennsylvania, office on April 1, 1994. No extensions were granted to petitioners for the late filing of their returns. Sec. 6081(a). Under section 6072(a), calendar year taxpayers are required to file their income tax returns by April 15th following the close of the calendar year. When April 15th falls on a Saturday, Sunday, or legal holiday, the return is timely if filed on the next succeeding day which is not a Saturday, Sunday, or legal holiday. Sec. 7503. Thus, petitioners' 1989, 1990, 1991, and 1992 returns should have been filed, respectively, on April 15, 1990, 1991, 1992, and 1993. Because April 15, 1990, was a Sunday, petitioners' 1989 return should have been filed on April 16, 1990. Their returns, therefore, were filed late.

The addition to tax under section 6651(a)(1) is imposed where there is failure to timely file a tax return, unless it is shown that the failure to timely file is due to reasonable cause

and not due to willful neglect. Petitioners presented no evidence to establish reasonable cause for the delinquent filing of their returns. Although petitioner claimed that their return preparer was supposed to have filed applications for extensions to file, which he failed to do, the Court is skeptical of this contention. For example, the 1989 return, which should have been filed on or before April 16, 1990, was filed on June 11, 1992, over 2 years beyond the due date. Petitioner did not testify as to the date the return preparer was engaged to prepare petitioners' returns. Since the 1989, 1990, and 1991 returns bear almost identical signature dates, it is logical for the Court to conclude that petitioners, in all probability, did not engage the services of the return preparer until sometime in 1992, when the returns were signed. This would have been past the due date for filing the returns. Petitioners have not established reasonable cause for the late filing of their returns. Respondent is sustained on this issue.

Decision will be entered under Rule 155.